UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER O'DONNELL, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, <br><br> Defendant. | Case No. 1:18-cv-03126 (TNM) |

**MEMORANDUM OPINION**

Christopher O'Donnell sued the U.S. Agency for International Development ("USAID") under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*, alleging that it has unlawfully failed to release certain Country Development Cooperation Strategies ("Cooperation Strategies"). USAID has moved to dismiss Mr. O'Donnell's Complaint for lack of standing and for failure to state a claim. For the reasons given below, the Court will grant USAID's Motion to Dismiss.

**I.**

Cooperation Strategies detail USAID's priorities for international development projects. "Strategic planning in a country or region . . . is the process by which USAID defines its objectives for development to maximize the impart of [its] work." Compl. Ex. 2 at 2, ECF No. 1-2.[1] And Cooperation Strategies communicate "development needs, constraints, and opportunities; specify[] a Mission's focused choice of objectives; and defin[e] associated resource priorities and planned implementation approaches." *Id.* at 4. They "lay[] the

---

[1] Citations are to the page numbers generated by this Court's CM/ECF system.

groundwork for subsequent decision making," "bring[] all" staff "to a common understanding about program priorities," and "create[] a forum for interaction and buy-in, particularly with local stakeholders and partners." *Id.* at 2–3. Once a Cooperation Strategy is approved, USAID staff in the country define in greater detail how they will operationalize the Cooperation Strategy. *Id.* at 3. Eventually, USAID identifies projects to implement the Cooperation Strategy and issues solicitations for bids for the projects. *See* Compl. ¶ 11, ECF No. 1

Mr. O'Donnell argues that USAID must issue Cooperation Strategies for particular countries. *See id.* ¶ 6. But USAID has failed to do so. *See id.* ¶¶ 5, 13. That failure, he argues, harms small businesses like his, which are interested in responding to USAID's bid solicitations. *See id.* ¶¶ 3, 5a, 11. Small businesses must travel and meet with USAID staff to discuss information that the Cooperation Strategies would otherwise include. *Id.* ¶ 11. Thus, Mr. O'Donnell argues that USAID has violated the APA and asks the Court to compel the agency to post Cooperation Strategies for certain countries to its website. *See id.* ¶ 5d.

USAID, however, maintains that Mr. O'Donnell lacks standing under Fed. R. Civ. P. 12(b)(1), and he fails to state a claim upon which relied can be granted, Fed. R. Civ. P. 12(b)(6). *See* Def.'s Mot. to Dismiss at 1, ECF No. 8. Because Mr. O'Donnell is proceeding *pro se*, the Court advised him of his responsibility to respond to USAID's motion. *See* Order, ECF No. 9. He responded, but his opposition did not address USAID's substantive arguments. *See* Pl.'s Opp'n, ECF Nos. 10 and 10-1. Instead, he pointed out that USAID has updated some Cooperation Strategies on its website that he complained were missing or expired. *See id.* at ECF No. 10-1 at 1.

"It is well understood in this Circuit, that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments by the defendant, a court *may* treat

those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (emphasis added). But because Mr. O'Donnell is proceeding *pro se* and responded to USAID's Motion to Dismiss, the Court will not treat USAID's arguments as conceded.

Even so, Mr. O'Donnell has failed to state a claim upon which relief may be granted. The Court construes his filings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), but even under a liberal reading, he has failed to point to any authority that requires the USAID to issue Cooperation Strategies on its public website.

## II.

A motion to dismiss under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." And it is the plaintiff's burden to establish jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When reviewing such a motion, the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, a plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But it need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678.

3

# III.

USAID claims that Mr. O'Donnell lacks standing. "[A] showing of standing is an essential and unchanging predicate to any exercise of a court's jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996). And the irreducible constitutional minimum of standing consists of three elements: (1) an injury in fact, (2) fairly traceable to the challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo v. Robinson*, 136 S. Ct. 1540, 1547 (2016). According to USAID, Mr. O'Donnell has not established either of the first two elements.

But "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561. What is more, Mr. O'Donnell is proceeding *pro se*. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.

At this stage, Mr. O'Donnell has alleged facts sufficient to find standing, but just. Liberally construed, Mr. O'Donnell's Complaint alleges that he must "invest significant resources" to learn about USAID funding priorities in certain countries that Cooperation Strategies would otherwise outline. Put differently, he must independently obtain information that should be freely available. And, he argues, USAID must issue this information. Thus, Mr. O'Donnell's alleged injury is traceable to USAID's failure to post certain Cooperation Strategies, and his injury would be remedied by granting his request to compel USAID to post additional Cooperation Strategies to its website.

Even so, Mr. O'Donnell has failed to state a claim upon which relief can be granted. He challenges USAID's failure to post certain Cooperation Strategies to its public website. And he

4

asks the Court to compel USAID to "publicly post when [] expired or missing [Cooperation Strategies] will be complete" and "post all [Cooperation Strategies] on the USAID public website." *See* Compl. ¶¶ 5a, 5d. Section 706(1) of the APA permits judicial review of agency inaction, but only within strict limits. *Anglers Conserv. Net. v. Priztker*, 809 F.3d 664, 670 (D.C. Cir. 2016). This case falls outside those strict limits.

Courts can compel an agency only "to take a *discrete* agency action that is it *required to take.*" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original) ("*SUWA*"). This standard reflects the common law writ of mandamus, which the APA "carried forward" in Section 706(1). *Id.* at 63. So Section 706(1) grants judicial review only if a federal agency has a "ministerial or non-discretionary" duty amounting to "a specific, unequivocal command." *Id* at 63–64.

None of the authorities that Mr. O'Donnell cites includes such a command. First, Mr. O'Donnell points to Section 7032(g) of the 2018 Consolidated Appropriations Act ("CAA"). Compl. ¶ 6; Compl. Ex. 1 at 4–5, ECF No. 1-1. But that section directs only that before USAID can expend funds in countries "for which a [Cooperation Strategy] has been concluded after the date of [the CAA,] . . . USAID shall review such [Cooperation Strategy]" to ensure that it includes certain features. Nothing in Section 7032(g) requires USAID to create or make publicly available Cooperation Strategies.

True, Section 7032(g) cites 22 U.S.C. § 8211 to suggest that USAID must create Cooperation Strategies. But Section 8211 contains no "specific, unequivocal command" that USAID create Cooperation Strategies. Nor does it even hint that USAID must post Cooperation Strategies to its public website. Instead, it states that USAID "in each nondemocratic country or

5

democratic transition country *should* develop . . . a strategy to promote democratic principles, practices, and values." 22 U.SC.§ 8211(c)(1).

Generally, "should" is precatory, not mandatory. *See, e.g.*, *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 377 (2013) (noting that Federal Rule of Civil Procedure 54(d)(1)'s use of "the word 'should' makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court"); *Jolly v. Listerman*, 672 F.2d 935, 945 (D.C. Cir. 1982) ("use of the word 'should' . . . detracts significantly from any claim that this guideline is more than merely precatory"); *Lambert v. Austin Ind.*, 544 F.3d 1192, 1196 (11th Cir. 2008) ("The word 'should' means 'usually no more than an obligation of propriety or expediency, or a moral obligation.'"); *United States v. Maria*, 186 F.3d 65, 70 (2d Cir. 1999) ("the common meaning of 'should' suggests or recommends a course of action, while the ordinary understanding of 'shall' describes a course of action that is mandatory"). And Mr. O'Donnell points to nothing suggesting that "should" as used in Section 8211 has a meaning other than to its usual meaning.

Whatever USAID *should* do, Section 8211 does not contain the kind of "mandatory, nondiscretionary duty" courts can compel agencies to perform. Indeed, it appears Congress intended Section 8211(c)(1) to be discretionary, not obligatory. Earlier versions of that section ordered that USAID "*shall* develop . . . a strategy to promote democratic principles, practices, and values." *See* H.R. 982 § 106, 110th Cong. (2007). But Congress substituted the mandatory "shall" for the more discretionary "should," 22 U.SC.§ 8211(c)—a substantive change, as noted by commentators. *See* Patrick J. Glen, *The Advance of Democracy Act and the Future of United States Democracy Promotion Efforts*, 9 Santa Clara J. Int'l L. 273, 294–95 (2011); *see also Maria*, 186 F.3d at 70 (comparing "should" with "shall"). Meanwhile, other subsections of

Section 8211 retained the more mandatory "shall," suggesting that the two terms have different force.  *Compare* H.R. 982 § 101(b)(2) *with* 22 U.S. C. § 8211(a)(1).

Courts "must presume that a legislature says in a statute what it means and means in a statute what it says." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).  And in its current form, Section 8211 simply does not contain a "specific, unequivocal command" that USAID has a "non-discretionary duty" to issue Cooperation Strategies.

Finally, Mr. O'Donnell points to Section 7060(a) of the CAA and Section 201 of USAID's Automated Directive System.  But neither of these authorities helps his claim.  Section 7060(a) provides only that certain appropriations may be available for education programs identified in Cooperation Strategies.  Meanwhile, USAID argues that the Automated Directive System is neither statutory nor regulatory authority with the force of law, Mot. to Dismiss at 9 n.6, and "[t]he limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by *law*," *SUWA*, 542 U.S. at 65 (second emphasis added).  But the Court need not decide whether the Automated Directive System has any legal force because Mr. O'Donnell has pointed to no "specific, unequivocal command" in Section 201 requiring USAID to issue Cooperation Strategies.  *See SUWA*, 542 U.S. at 63–64.

Ultimately, Mr. O'Donnell has failed to point to legal authority that requires USAID to issue Cooperation Strategies.  If he wishes to obtain this information, there may be alternative means, such as the Freedom of Information Act.  But the Court cannot compel an agency to act beyond its non-discretionary duties commanded by law.  *See id.* at 63–64.  So Mr. O'Donnell has failed to state a claim upon which relief may be granted.

**IV**.

For these reasons, the Defendant's Motion to Dismiss will be granted. A separate order will issue.

Dated: July 1, 2019                                      TREVOR N. McFADDEN, U.S.D.J.